**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION<br>OF THE KINGDOM OF DENMARK (SKAT)<br>TAX REFUND SCHEME LITIGATION<br><br>This document relates to:        18-cv-10100 | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF NEWSONG FELLOWSHIP
CHURCH 401(k) PLAN AND ALEXANDER JAMIE MITCHELL III'S
<u>MOTION TO DISMISS COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT ......................................................................................................................4

    Legal Standard .................................................................................................................4

    **I.**    **The Court lacks subject-matter jurisdiction** ......................................................5

        a.    The Court lacks subject-matter jurisdiction because SKAT seeks to enforce foreign tax assessments ................................................................5

            i.    The Revenue Rule prohibits enforcement of foreign tax laws ........5

            ii.    The Revenue Rule bars SKAT's claims ...........................................7

            iii.    SKAT's claims do not meet the Revenue Rule's limited exception ......................................................................................10

        b.    SKAT's action is barred by the U.S.-Denmark Income Tax Treaty ..........12

    **II.**    **Alternatively, SKAT's claims are inadequately pleaded, and the Court should dismiss them pursuant to Rule 12(b)(6)** ................................................14

CONCLUSION ................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................14, 15, 16

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
268 F.3d 103 (2d Cir. 2001)......................................................................................5, 6, 9, 14

*Banco Do Brasil, S.A. v. A. C. Israel Commodity Co.,*
190 N.E.2d 235 (N.Y. 1963)..................................................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................14, 15

*Boring v. Google Inc.,*
362 Fed. App'x 273 (3d Cir. 2010)........................................................................................15

*In re Burlington Coat Factory Sec. Lit.,*
114 F.3d 1410 (3d Cir. 1997)................................................................................................15

*Cement Masons' Union Local No. 592 Pension Fund v. Fletcher,*
No. CIV.A. 99-6132, 2000 WL 1899947 (E.D. Pa. Dec. 29, 2000).......................................16

*European Cmty. v. RJR Nabisco, Inc.,*
355 F.3d 123 (2d Cir. 2004)....................................................................................................6

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009)..................................................................................................15

*Gilberton Fuels, Inc. v. Phila. & Reading Coal & Iron Co.,*
342 Pa. 192, 20 A.2d 217 (Pa.1941)......................................................................................16

*J.C. Penney Corp., Inc. v. Carousel Ctr. Co., L.P.,*
635 F. Supp. 2d 126 (N.D.N.Y. 2008)..................................................................................16

*Makarova v. United States,*
201 F.3d 110 (2d Cir. 2000)....................................................................................................4

*J.S. ex rel N.S. v. Attica Cent. Schs.,*
386 F.3d 107 (2d Cir. 2004)....................................................................................................4

*Ramon v. Budget Rent-A-Car Sys., Inc.,*
No. 06-1905, 2007 WL 604795 (D.N.J. Feb. 20, 2007).........................................................16

*Republic of Colombia v. Diageo of N.A. Inc.,*
531 F. Supp. 2d 365 (E.D.N.Y. 2007)...................................................................5, 6, 10, 11

*Republic of Ecuador v. Philip Morris Cos., Inc.*,
    188 F. Supp. 2d 1359 (S.D. Fla. 2002) ........................................................................5, 6, 8, 9

*Republic of Honduras v. Phillip Morris Co.*,
    341 F.3d 1253 (11th Cir. 2003) ..................................................................................5, 7, 8

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)...........................................................................................................11

*Selcke, By & Through Schacht v. F.D.I.C.*,
    No. CIV. A. 92-6616, 1994 WL 719626 (E.D. Pa. Dec. 21, 1994)........................................16

*Springfield Twp. v. Mellon PSFS Bank*,
    889 A.2d 1184 (Pa. 2005) ..................................................................................................17

## Statutes

28 U.S.C. § 1603(d) .................................................................................................................11

Danish Capital Gains Tax Act § 23.1 ........................................................................................9

Internal Revenue Code § 401(a) ...............................................................................................3

Internal Revenue Code § 892...................................................................................................11

## Other Authorities

Convention for the Avoidance of Double Taxation and the Prevention of Fiscal
    Evasion with respect to Taxes on Income, U.S.-Den., Aug. 19, 1999....................2, 12, 13, 14

Fed. R. Civ. P. 12....................................................................................................................4, 15

Jt. Comm. Tax., *Explanation of Proposed Income Tax Treaty Between the United
    States and Denmark* (Oct. 8, 1999)..................................................................................12, 13

Treas. Reg. § 1.892-4T(c)(4) ...................................................................................................11

## INTRODUCTION

The plaintiff in this action, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT"), is the Danish tax authority, and it seeks through this lawsuit to recover tax refunds it paid years ago with respect to dividend-withholding taxes on investments in Danish securities. Both American and international law recognize what is known as the "Revenue Rule," which prohibits one sovereign from using the courts of another sovereign to enforce its revenue rules either directly or indirectly. SKAT seeks to engage this Court to do what the Revenue Rule forbids.

While SKAT's complaint includes claims arising under Pennsylvania law, SKAT's explicit goal is the recovery of tax refunds paid by SKAT and the avoidance of the Danish administrative proceedings, and deciding whether SKAT is entitled to relief would require this Court to engage in interpreting and applying complex Danish tax law while the issue is simultaneously addressed in Denmark.

SKAT's claim also violates SKAT's contractual obligations under the bilateral tax treaty between the United States and Denmark, which specifically limits the extent of tax collection assistance by each government. As such, the Court should dismiss this case for lack of subject-matter jurisdiction.

In addition, SKAT's claims are likewise subject to dismissal as they are inadequately pleaded.

## BACKGROUND

Under section 65 of the Danish Withholding Tax Act, Danish companies that issue dividends to shareholders are required to withhold and remit to SKAT a 27 per cent tax on the dividend.  Compl. ¶ 20.[1]  "Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority."  *Id.* at ¶ 19.  If the withheld tax exceeds the amount of tax negotiated under the treaty between the United States and Denmark, then United States shareholders may be eligible to receive a refund of such excess.  *Id.* at ¶¶ 21, 22; Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, T.I.A.S. No. 13056 (the "Treaty"), Art. 10.  SKAT "is the agency of the government of Denmark charged with the assessment and collection of Danish taxes."  Compl. ¶ 1.  SKAT is therefore the Danish agency responsible for accepting, approving, and paying withholding tax refund claims. *See id.* at ¶¶ 1, 16, 23, 24.

In May and June 2018, SKAT filed more than 140 nearly identical complaints in 11 federal district courts and three state courts seeking to recover dividend-withholding-tax refunds from various defendants, specifically pension plans and the plans' authorized representatives. SKAT contends that the plans delegated to the relevant authorized representatives the authority to act as their agents with respect to the submission of their tax-withholding-refund claims.  The authorized representatives, in turn, are alleged to have delegated the authority to submit tax-withholding-refund claims to a payment agent.

Here, SKAT alleges the Newsong Fellowship Church 401(k) Plan (the "Plan") and Alexander Jamie Mitchell III ("Mr. Mitchell") submitted falsified SKAT refund claims through

---

[1]  SKAT's complaint against Defendants Newsong Fellowship Church 401(k) Plan and Alexander Jamie Mitchell III is attached as Exhibit 1 to the Declaration of John C. Blessington.

Goal Taxback Limited (the "Payment Agent").  *Id.* at ¶¶ 26, 34–40.[2]  According to SKAT, the Payment Agent submitted claims that included a cover letter, a standard tax-refund form entitled "Claim to Relief from Danish Dividend Tax," a signed power of attorney from Mr. Mitchell that authorized the Payment Agent to receive the payment on behalf of the Plan, a statement from the United States Internal Revenue Service (the "IRS") confirming that the Plan was a qualified pension plan under section 401(a) of the Internal Revenue Code, and a "credit advice" or "tax voucher" from the broker custodian (e.g., ED & F Man Capital Markets), which was, at the time, authorized and regulated by the Financial Conduct Authority of the United Kingdom.[3]  Compl. ¶¶ 26, 28, 45; *see, e.g.*, Ex. 2.

SKAT contends that it investigated these tax-refund claims for at least the last three years.  SKAT alleges that in June 2015 it received information indicating certain dividend withholding-tax refund claims it had paid out may be fraudulent, and it began an investigation.  Compl. ¶ 6.  SKAT further alleges that it concluded by August 2015 that many of these tax-refund claims were fraudulent, including the claims by the Plan, because the Plan supposedly "never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax."  Compl. ¶¶ 48, 49.  Despite conceding that SKAT reached these conclusions at least three years prior to filing this action, the complaint offers no further explanation for the

---

[2] SKAT filed this action on June 12, 2018, alleging fraud (Count I), aiding and abetting (Count II), payment by mistake (Count III), unjust enrichment (Count IV), money had and received (Count V), and negligent misrepresentation (Count VI).  On November 20, 2018, SKAT filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) as to Counts I, II, and VI, which the Court permitted on November 26, 2018.  *See* Doc. Nos. 34, 35.  This motion relates to the remaining counts.

[3] *See* https://register.fca.org.uk/.  In 2013, the Financial Services Authority dissolved and the Financial Conduct Authority assumed some of its regulatory responsibilities.

basis of this determination and instead relies on conclusory statements and allegations for its claims.  *See generally* Compl.  Indeed, it appears SKAT is intentionally vague about its basis for the assertion that the Plan never owned the shares—notably, SKAT does not allege that the documentation submitted by the Payment Agent with the refund claims was incorrect or fraudulent, nor does SKAT admit that the question of whether the Plan owned the shares is a matter of the definition of "beneficial owner" under Danish tax law (likely because SKAT knows that such an admission would be fatal to its claims because of the Revenue Rule, discussed *infra*).  *See generally* Compl.

Earlier this year, SKAT issued final-determination letters seeking repayment of these withholding-tax refunds.  Defendants have both appealed SKAT's administrative determination in Denmark.  *See* Exs. 3, 4.  Yet, while their appeals were only recently filed and remain pending and while SKAT's determination is under Danish administrative appellate review (and subject to judicial review thereafter), SKAT asks this Court to short-circuit the Danish administrative and judicial process to force the return of the withholding-tax refunds in clear violation of the Revenue Rule and the Treaty.

## ARGUMENT

### Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when a federal court lacks subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A district court "must accept as true all material factual allegations in the complaint, but [may not] draw inferences from the complaint favorable to plaintiffs."  *J.S. ex rel N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Additionally, a district court may consider evidence beyond the pleadings to resolve a jurisdictional issue.  *Id.*; *Makarova v. United States*, 201 F.3d 110, 113 (2d

Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, . . . may refer to evidence outside the pleadings.").

A Revenue Rule challenge to the Court's exercise of subject-matter jurisdiction over a claim falls under Rule 12(b)(1).  *See, e.g.*, *Republic of Colombia v. Diageo of N.A. Inc.*, 531 F. Supp. 2d 365, 381 (E.D.N.Y. 2007) ("With respect to [d]efendants' revenue rule motion, irrespective of whether the revenue and penal rules are characterized as limitations on subject-matter jurisdiction or abstention doctrines, Rule 12(b)(1) is an appropriate basis on which to make such a motion.").

I.      **The Court lacks subject-matter jurisdiction.**

   a.   **The Court lacks subject-matter jurisdiction because SKAT seeks to enforce foreign tax assessments.**

      i.   *The Revenue Rule prohibits enforcement of foreign tax laws.*

The Revenue Rule is a well-established common-law principle that prohibits courts from enforcing the internal revenue laws of a foreign sovereign, including final tax judgments or unadjudicated tax claims.  *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109 (2d Cir. 2001); *see also Republic of Ecuador v. Philip Morris Cos., Inc.*, 188 F. Supp. 2d 1359, 1362 (S.D. Fla. 2002) (referring to the Revenue Rule as an "age-old common law doctrine provid[ing] that courts of one sovereign will not enforce unadjudicated tax claims of other sovereigns").  The Revenue Rule is grounded in the perpetuation of constitutional and prudential objectives, namely "respect for sovereignty, concerns for judicial role and competence and separation of powers."  *R.J. Reynolds*, 268 F.3d at 109.  When it applies, the Revenue Rule "requires [the] court to abstain from considering the [plaintiff's] claims."  *Republic of Honduras v. Phillip Morris Co.*, 341 F.3d 1253, 1261 (11th Cir. 2003).

The Revenue Rule bars any foreign sovereign's claims for *direct* enforcement of foreign

tax laws. A foreign sovereign seeks direct enforcement of its internal-revenue laws "when a judgment in [its favor] would require the defendants to reimburse [it] for lost tax revenues." *European Cmty. v. RJR Nabisco, Inc.*, 355 F.3d 123, 131 (2d Cir. 2004) (affirming district court's decision to dismiss claims for lost tax revenue due to alleged tax evasion scheme).

The Revenue Rule also bars claims that seek *indirect* enforcement of foreign tax laws if such a claim "seeks a remedy that would give extraterritorial effect to its tax laws." *See id.* For example, in *R.J. Reynolds*, the Second Circuit relied on the Revenue Rule to reject Canada's claim to recover law-enforcement costs from defendants who were allegedly engaged in illegal tax-avoidance schemes. *R.J. Reynolds*, 268 F.3d at 131–32; *accord European Cmty.*, 355 F.3d at 132. In addition, a federal district court held that a foreign sovereign's claim to recover lost *profits* from the sale of liquor products that it allegedly suffered due to the defendants' tax-evasion scheme also constituted indirect enforcement prohibited under the Revenue Rule as the claim was derivative of, and substantively related to, the foreign sovereign's internal tax laws. *See Colombia*, 531 F. Supp. 2d. at 365.[4]

In determining whether the Revenue Rule applies to a particular claim brought by a foreign sovereign, "[w]hat matters is not the form of the action, but the substance of the claim." *R.J. Reynolds*, 268 F.3d at 130. Thus, a claim that in form alleges violations of United States laws but in substance "seeks to recoup actual damages in the amount of lost revenue" is barred by the Revenue Rule to the same extent as a direct claim for foreign tax revenue. *Ecuador*, 188

---

[4] A claim would not be a prohibited indirect enforcement claim under the Revenue Rule where the foreign sovereign seeks, for example, lost commercial-actor profits arising from alleged illegal activities of the defendant if the underlying illegal conduct did not implicate the enforcement of a foreign sovereign's tax law and thus did not raise sufficient policy concerns to warrant application of the Revenue Rule. In *Colombia*, the court found that the Colombian government's claim for lost commercial-actor profits based on the defendants' narcotics-laundering activities (which only required recognition of the Colombian tax law rather than its enforcement) was not barred by the Revenue Rule. *See Colombia*, 531 F. Supp. 2d at 395–99.

F. Supp. 2d at 1366–67.  Consistent with that approach, the New York Court of Appeals affirmed the dismissal of a civil-fraud action brought by an agent of a foreign government on the basis of the Revenue Rule.   In *Banco Do Brasil, S.A. v. A. C. Israel Commodity Co.*, a Brazilian government bank brought a conspiracy-to-defraud claim against a coffee importer for illegally circumventing Brazilian currency regulations with forged documents.   190 N.E.2d 235, 237 (N.Y. 1963).   The court affirmed dismissal of the suit in part on the basis that "it is well established . . . that one State does not enforce the revenue laws of another," and "[p]laintiff is an instrumentality of the Government of Brazil and is seeking, by use of an action for conspiracy to defraud, to enforce what is clearly a revenue law."   *Id.*   The substance-over-form approach in applying the Revenue Rule is important because "[i]f it were otherwise, litigants could freely avoid the impact of the revenue rule by bringing tax claims under the guise of non-tax-related causes of action."   *Honduras*, 341 F.3d at 1256.  This is precisely what SKAT is attempting to do here.

### ii.   The Revenue Rule bars SKAT's claims.

The Revenue Rule bars SKAT's claims in this case because, in substance, they are nothing more than an attempt by SKAT to use United States courts to seek reimbursement for allegedly lost tax revenue through enforcement of Danish tax laws.  SKAT admits as much on the face of the complaint.  *See* Compl. ¶ 13.

In its complaint, SKAT identifies itself as "the agency of the government of Denmark charged with the assessment and collection of Danish taxes."  *Id.* at ¶ 1.  SKAT expressly alleges that it suffered damages that constitute the basis for these claims as a result of having paid "*withholding tax refund claims* . . . of at least $664,000 (U.S.)."  *Id.* at ¶ 13 (emphasis added). SKAT clearly seeks to recover amounts identical to the amounts of allegedly fraudulent tax

refunds it paid to the Plan, and a favorable judgment for SKAT would result in Defendants' being compelled to reimburse SKAT for its allegedly lost tax revenues. *See id.* at ¶¶ 13, 72, 75, 80. As such, regardless of how it styles its claims, SKAT is explicitly requesting this Court to directly enforce Danish tax laws, which is prohibited by the Revenue Rule. *See Honduras*, 341 F.3d at 1257 (holding that although the plaintiff foreign sovereigns framed their claims as RICO violations, the claims fundamentally dealt with the "adjudication of foreign taxes," which is barred under the Revenue Rule); *Ecuador*, 188 F. Supp. 2d at 1367 (holding that the substance of Ecuador's claims is akin to directly and indirectly enforcing its tax laws and adjudicating a foreign tax claim, even though they were "fashioned under civil RICO and common law causes of action").

If the law were otherwise, a foreign government would be permitted to make bare, non-tax allegations in order to gain access to United States courts and circumvent the policy behind the Revenue Rule. *Honduras*, 341 F.3d at 1256 (noting that absent a substance-over-form rule, "litigants could freely avoid the impact of the Revenue Rule by bringing tax claims under the guise of non-tax-related causes of action"). Notwithstanding its efforts to shroud the tax revenue-seeking nature of its claims by pursuing relief in the United States through this action, it is clear from the complaint that SKAT's fundamental goal is to recover tax-collection refunds.

Moreover, adjudication of SKAT's claims would ultimately require the Court to interpret, apply, and potentially enforce Danish tax laws in direct contravention of the Revenue Rule. The core of SKAT's allegations is that SKAT concluded that the Defendants fraudulently represented that the Plan owned shares of Danish companies to claim a refund of Danish dividend withholding taxes. Compl. ¶¶ 48–49. Thus, the resolution of this case would require the Court to determine whether *under Danish tax law* the Plan "owned" or was deemed to own shares of

such companies when the dividends were paid.  Specifically, the Court would be required to interpret, apply, and enforce Danish tax law, including section 23.1 of the Capital Gains Tax Act of Denmark and section C.B.2.1.6.1 of *The Legal Guide*, which is guidance published by SKAT setting forth its views on current practice.[5]  Exs. 5, 6.  As the Second Circuit noted, "[e]nforcing foreign revenue laws is precisely the type of meddling in foreign affairs the Revenue Rule forbids."  *R.J. Reynolds*, 268 F.3d at 108.

The Plan and Mr. Mitchell are currently appealing in Denmark SKAT's determination that the Plan did not own the shares at issue and did not receive the dividends.  *See* Exs. 3, 4.  SKAT asks this Court to disrupt the Danish administrative process and to declare as a matter of law *for Danish tax-refund purposes* that the Plan did not own the shares.  Permitting SKAT to proceed with its claims in this litigation would be especially inappropriate given the lack of a determination by any administrative, appellate, or judicial body in Denmark regarding the existence of the alleged fraudulent conduct by the Defendants or the status of tax refunds.  In effect, SKAT asks this Court to assess in the first instance whether tax fraud occurred under Danish tax law (i.e., whether the Plan ever owned shares of Danish companies entitling it to a refund of Danish withholding taxes and, if not, whether Defendants fraudulently claimed otherwise).  The interpretation and application of a foreign sovereign's tax laws is precisely the kind of situation that the Revenue Rule is intended to prevent.  This is exactly why SKAT's proper recourse "is not in the courts but rather in negotiating a tax treaty with [the political branches of the United States] or adjudicating and enforcing these claims within its own territory."  *See Ecuador*, 188 F. Supp. 2d at 1367.

---

[5] Other relevant sections of the Danish tax law, with English translations, are attached hereto as Exhibits 7–12.

*iii.   SKAT's claims do not meet the Revenue Rule's limited exception.*

Although the Revenue Rule is broad, its reach is not unlimited and it cannot be applied where the policy concerns that underlie it are not present.  For example, a foreign sovereign was permitted to proceed with its claims where the claims were brought by the sovereign as a commercial actor rather than in its capacity as a sovereign and the remedy did not give "extraterritorial effect" to foreign tax law.  *See Colombia*, 531 F. Supp. 2d at 386–90.

In *Colombia,* the court laid out a general rule regarding whether a foreign sovereign's claim for damages constitutes impermissible indirect enforcement or, instead, a permissible damages claim brought by a foreign sovereign in its capacity as a commercial actor.  *See Colombia*, 531 F. Supp. 2d at 386–90.  Colombia alleged RICO violations and sought, *inter alia*, recoupment of (i) lost tax revenues and (ii) the commercial profit that the government lost as the sole seller and distributor of liquor within Colombia.  *See id.* at 380.  The court held that Colombia's claim for lost tax revenues was clearly barred as direct enforcement under the Revenue Rule because such damages were sought in its sovereign capacity.  However, the court also determined that Colombia's claims for lost revenues and profits, which Colombia alleged to have incurred in its capacity as a commercial actor, were not automatically barred under the Revenue Rule, and the court bifurcated the claims into the portion attributable to the defendants' tax-evasion scheme and the portion attributable to the defendants' money-laundering scheme. *See id.* at 393–94.  The court concluded that the lost profits claim arising from the defendants' tax-evasion scheme would "permit [Colombia] to bring an indirect claim for lost tax revenues" and would, therefore, "constitute an indirect enforcement of Colombian tax laws" barred by the Revenue Rule as the lost profits claim was "nothing more than an attempt to use a United States tort claim to seek compensation for harms suffered as a result of the evasion of a foreign

-10-

sovereign's tax laws." *Id.* at 394.  By contrast, the court reasoned that the lost profits attributable to the defendant's money-laundering scheme was not barred by the Revenue Rule because it only tangentially related to Colombian tax law, required a mere recognition of such laws (rather than its interpretation, application, or enforcement), and did not raise sufficient policy concerns to warrant application of the Revenue Rule.  *See id.* at 395.

Here, SKAT endeavors to avoid the prohibitions of the Revenue Rule by bringing its claims under United States law and attempting to portray itself as a defrauded commercial actor. Reality belies that posturing.  SKAT did not act and does not allege to have acted as an investor, trader, broker, or any other commercial party to the securities investments at issue.  Rather, these claims arose directly and solely in the context of SKAT's role as a government body performing a core government function—namely, the assessment and collection of Danish taxes, including making a determination of whether withholding tax was due or refundable.[6]

Indeed, SKAT brought this action only after it began its tax audits in Denmark (which are still ongoing and currently only in the administrative appeals phase).  *See* Exs. 3, 4.  Further, SKAT's claims relate to a purported tax scheme and require not only recognition of Danish tax

---

[6] The question of when a foreign sovereign is acting in its capacity as a commercial actor has been addressed in the context of the Foreign Sovereign Immunities Act ("FSIA") and under section 892 of the Internal Revenue Code of 1986, as amended (the "Code").  Under the FSIA, a "commercial activity" of a foreign sovereign is defined as "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d). If the foreign state's activity is "peculiar to sovereigns" and is a type of conduct in which private citizens cannot engage, the foreign state's activity will not constitute "commercial" activity.  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993).  Under this definition, SKAT's conduct in the present case—collecting taxes—is a purely "sovereign" activity that private citizens cannot engage in.  Thus, here, SKAT is acting not in a commercial but in a sovereign capacity. Code section 892 exempts certain types of income earned by foreign sovereigns from United States income tax, with a proviso that a foreign sovereign's U.S. income arising from commercial activities cannot benefit from such an exemption.  The relevant Treasury Regulations provide a list of five specific categories of activities that do *not* constitute commercial activities, one of which is "governmental functions"—i.e., "activities performed for the general public with respect to the common welfare or which relate to the administration of some phase of government."  Treas. Reg. § 1.892-4T(c)(4).  The collection of taxes is undeniably a government function, performed as part of government administration, which SKAT admittedly performs in a sovereign capacity in pursuing its claim for lost tax revenue.  Compl. ¶ 1.

laws, but their interpretation, application, and potential enforcement.  Unlike the sovereign in *Colombia*, which had a commercial role in the distribution of liquor in the marketplace that it controlled, SKAT alleges no other non-tax basis for its claims, and it fails to allege that it has engaged in any activity outside of its role as the tax authority for Denmark.  Because SKAT's claims are based on an alleged underlying withholding-tax refund scheme that significantly implicates Danish tax laws, this Court would be required to determine whether the Defendants violated Danish tax law and potentially enforce that foreign law in the recovery of Danish tax revenues.  As such, SKAT's claims are barred as a direct enforcement of the Revenue Rule.

**b.  SKAT's action is barred by the U.S.-Denmark Income Tax Treaty.**

The United States and Denmark have entered into an income-tax treaty that governs the parameters for assistance between the two governments with respect to the collection of taxes. Treaty, Art. 27.  Article 27, paragraph 2, of the Treaty, titled Administrative Assistance, provides that Denmark may submit to the "competent authority" of the United States "[a]n application for assistance in the collection of a revenue claim[,]" which application "may be accepted" by the United States  *See* Treaty, Art. 27, ¶¶ 2, 3.  Thus, the Treaty contemplates a tax-collection-assistance request from the Danish taxing authority (SKAT) to the United States' competent authority (the IRS), which the IRS then has the discretion to accept or reject.  *See id.* at ¶ 3; *see also* Jt. Comm. Tax., *Explanation of Proposed Income Tax Treaty Between the United States and Denmark*, p. 11 (Oct. 8, 1999) (noting delegation of competent authority to the Assistant Commissioner of the IRS).[7]  If the IRS accepts a request for assistance by Denmark, the revenue claim is treated by the IRS as an assessment under United States law against the taxpayer.

---

[7] Internal Revenue Manual 5.21.7.4 (Nov. 13, 2015) provides specificity with respect to the content and procedures for such a request, https://www.irs.gov/irm/part5/irm_05-021-007r#idm140569389882384.

Treaty, Art. 27, ¶ 4.  Nowhere in the Treaty is Denmark granted a right of action to collect its taxes through the United States court system.  Rather, Denmark's sole avenue of redress, if any, is through a request to the IRS.  However, rather than make a request for collection under the Treaty, SKAT attempts to bypass the mandated collection-assistance procedure negotiated by both countries.

Moreover, Article 27, paragraph 8, of the Treaty carves out a broad limitation upon the IRS's discretionary authority to provide collection assistance, stating that

> [n]o assistance shall be provided under this Article for a revenue claim in respect of a taxpayer to the extent the taxpayer can demonstrate that: a) where the taxpayer is an individual, the revenue claim relates to a taxable period in which the taxpayer was a citizen of the requested State, and b) where the taxpayer is an entity that is a company, estate or trust, the revenue claim relates to a taxable period in which the taxpayer derived its status as such an entity from the laws in force in the requested State.

*Id.* at ¶ 8.

The congressional Joint Committee on Taxation's explanation of the (then) proposed Treaty (the "Joint Committee Explanation") further explains that "[t]he *only* collection assistance required in [cases where paragraph 8 applies] would be assistance authorized under the proposed treaty's mutual agreement procedure article."  Jt. Comm. Tax., at p. 50 (emphasis added).  Thus, the plain language of the Treaty, in conjunction with the Joint Committee Explanation, makes clear that, where a revenue claim falls under the exception set forth in Article 27, paragraph 8, the *sole* avenue of collection assistance available to a contracting state is through the competent authority procedures provided by Article 25, Mutual Agreement Procedure.[8]

SKAT's claim for its allegedly lost tax revenue falls squarely within the provisions of Article 27, paragraph 8.  Here, Mr. Mitchell was a United States citizen during the period to

---

[8] Article 25 of the Treaty allows the competent authorities of Denmark and the United States to resolve "difficulties  or doubts" relating to the interpretation and application of the Treaty by mutual agreement.  Treaty, Art. 25, ¶ 4.

which SKAT's claim relates, and the Plan was an entity that derived its status from United States laws during the same period. *See id.* at ¶¶ 17, 18. Thus, under the unambiguous language of paragraph 8, SKAT is precluded from requesting assistance for its tax collection from the United States under Article 27. Rather, any collection assistance must be obtained only through the mutual agreement procedures set forth in Article 25.[9] Neither the Treaty nor other pertinent authority identifies any other collection channels for SKAT to pursue its revenue claim, and particularly not the United States courts.

SKAT seeks to use the United States court system to achieve what it is prohibited from doing under the Treaty.[10] As the Second Circuit noted, the presence of a provision specifically addressing the parameters of the collection of tax revenue within the Treaty is strong proof that any action outside the scope of the Treaty that specifically seeks tax revenue collection is barred. *R.J. Reynolds*, 268 F.3d at 125 (noting that the Revenue Rule should be respected particularly "where the two sovereigns . . . have a well-established treaty process that has strictly limited the extent to which each government can pursue its tax claims using the other's domestic administrative and judicial processes").

## II.    Alternatively, SKAT's claims are inadequately pleaded, and the Court should dismiss them pursuant to Rule 12(b)(6).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombl*y, 550 U.S. 544, 570 (2007)). A "plaintiff's obligation to provide the

---

[9] SKAT may also seek an exchange of information regarding the revenue claim at issue (rather than its collection) under Article 26 (Exchange of Information).

[10] In fact, Article 27, paragraph 5, of the Treaty specifically stated that Article 27 does not create or provide "any rights of administrative or judicial review" of Denmark's revenue claim. However, this is precisely what SKAT is asking the Court to engage in here: a judicial review of Denmark's revenue claim. Treaty, Art. 27, ¶ 5.

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation omitted)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.") (citing *Iqbal*, 556 U.S. at 678). "Nonetheless, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

Under Pennsylvania law, an unjust-enrichment claim requires the plaintiff to allege "facts sufficient to establish benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Boring v. Google Inc.*, 362 Fed. App'x 273, 281 (3d Cir. 2010) (internal quotations and citation omitted). The claim is available in circumstances in which a plaintiff conferred some benefit to the defendant under "an unconsummated or void contract." *Id.* at 282 (affirming dismissal of plaintiff's unjust-enrichment claim because plaintiff failed to allege void or unconsummated contract) (citation and internal quotations omitted). Here, SKAT bases its unjust-enrichment claim on a theory that Defendants engaged in a "fraudulent scheme." SKAT does not and cannot allege an unconsummated or void contract between the parties. *See generally* Compl. On this basis alone, the Court should dismiss SKAT's unjust-enrichment claim. Nevertheless, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678.  Plaintiff's unjust-enrichment claim does just this and should be dismissed.

SKAT's payment-by-mistake claim should be dismissed for the same reasons.  When a defendant's alleged unjust behavior is purportedly the cause of a payment by mistake, the claim is duplicative of one of for unjust enrichment.  *See Cement Masons' Union Local No. 592 Pension Fund v. Fletcher*, No. CIV.A. 99-6132, 2000 WL 1899947, at *2 (E.D. Pa. Dec. 29, 2000) (stating money paid under mistake-of-fact recoverable under theory of unjust enrichment) (citing *Gilberton Fuels, Inc. v. Phila. & Reading Coal & Iron Co.*, 20 A.2d 217 (Pa. 1941)). Thus, as the payment-by-mistake claim is duplicative of SKAT's unjust-enrichment claim, the payment-by-mistake claim should be dismissed on the same grounds as the unjust-enrichment claim.  SKAT has also failed to plead any mistake of fact.  Instead, the complaint sets forth SKAT's willingness to refund tax claims purely based on the Payment Agent's submission to SKAT of the appropriate tax forms.  *See* Compl. ¶ 30 ("It was SKAT's practice to pay claims that included the required supporting documentation.").

The Court should also dismiss SKAT's money-had-and-received claim.  Under Pennsylvania law, money had and received is a damages theory for a claim of unjust enrichment only "where a defendant was paid money *by a third person* which in good conscience belonged to the plaintiff."[11]  *Selcke, By & Through Schacht v. F.D.I.C.*, No. CIV. A. 92-6616, 1994 WL 719626, at *5 (E.D. Pa. Dec. 21, 1994) (emphasis added).  SKAT does not allege a third-party

---

[11] Similarly, other jurisdictions treat money had and received and unjust enrichment as legally and factually the same.  *See, e.g.*, *J.C. Penney Corp., Inc. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129 n.1 (N.D.N.Y. 2008) ("[C]laims for unjust enrichment and money had and received are identical.") (citation omitted); *Ramon v. Budget Rent-A-Car Sys., Inc.*, No. 06-1905, 2007 WL 604795, at *5 (D.N.J. Feb. 20, 2007) (stating "unjust enrichment, also known as 'money had and received'").

mistakenly paid Defendants any money that belonged to SKAT. Furthermore, money had and received requires facts suggesting funds were paid by mistake or under compulsion or that there was otherwise inadequate consideration. *Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1195 (Pa. 2005). SKAT has not alleged such facts. SKAT's complaint states the opposite: that SKAT recognized the Payment Agent's submission of the tax-refund claim simply because it "included the required supporting documentation." *See* Compl. ¶ 30; *see also* Compl. ¶ 24 ("It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents."). Therefore, SKAT's money-had-and-received claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint against all Defendants.

December 6, 2018                         NEWSONG FELLOWSHIP
                                        CHURCH 401(k) PLAN and
                                        ALEXANDER JAMIE MITCHELL III

                                        /s/ John C. Blessington
                                        John C. Blessington (*pro hac vice*)
                                          john.blessington@klgates.com
                                        Brandon R. Dillman (*pro hac vice*)
                                          brandon.dillman@klgates.com
                                        K&L GATES LLP
                                        State Street Financial Center
                                        One Lincoln Street
                                        Boston, MA 02111
                                        T: 617.951.9185
                                        F: 617.261.3175

                                        *Attorneys for Newsong Fellowship Church*
                                        *401(k) Plan and Alexander Jamie Mitchell III*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and copies will be sent to those indicated as nonregistered participants on December 6, 2018.

/s/ John C. Blessington
John C. Blessington